DAVID MITCHELL v. DANIEL W. MITCHELL ET AL.

*Equity—Partition of estate by heirs at law—Acquiescence.*

After an acquiescence in the division and partition by the heirs of an estate for twenty years, it is too late for one of them to disturb or impeach it.

Appeal from Oakland.   (Stickney, J.)   Argued November 11, 1887.   Decided January 5, 1888.

Bill filed for partition of real estate, to dissolve a partnership, and for an accounting.   Defendant Daniel W. Mitchell appeals.   Decree affirmed, and record remanded for further proceedings thereunder.   The facts are stated in the opinion.

*Aaron Perry* (*Aug. C. Baldwin,* of counsel), for complainant.

*Charles F. Collier* (*F. A. Baker,* of counsel), for defendant.

MORSE, J.   George Mitchell, the father of David and Daniel W., the main parties in this litigation, died in the township of Holly, Oakland county, July 10, 1852, leaving a widow, Eleanor S. Mitchell, and seven children, named, respectively, William, John C., David, Daniel W., Hannah, Sarah, and Margaret.

At the time of his father's death, the defendant Daniel W. was 10 years of age.

George Mitchell left no will, and at his decease was the owner of 300 acres of land, constituting a farm, upon which he resided, in said township of Holly.   He also had a few hundred dollars of personal property.   He held a lease, having about three years to run, upon 120 acres of land, adjoining

his premises, known as the "Caton Farm." His estate was never administered upon in the probate court.

After his death, the widow and children remained upon the farm; the widow and the older boys taking charge of the same, and the personal property.

William was the eldest of the children. In 1855, he sold out his interest in the farm to John C. and David; the deed, however, running to John C. alone. From that date until 1863, John C. and David ran the farm together in copartnership. In 1857, they purchased the Caton farm, and it was deeded to them jointly. When Daniel W. came of age, in 1863, John retired, in accordance with an arrangement made between the three brothers. John received 60 acres of the home farm, and quitclaimed his interest, which consisted of his share and William's, to the other children. The deed contained a clause that it was understood by all the parties to the same that David was to have 21½ acres of the land over and above his equal and undivided share in the same, because of his interest in William's share. David and Daniel W. then began to work the place in copartnership, and continued to do so up to about the time of the filing of the bill of complaint in this cause.

At the time of this arrangement between John, David, and Daniel W., the elder boys divided the Caton farm between them; John taking seventy acres, and David fifty.

In 1867, David and Daniel W. purchased the sixty acres of the home farm of John; David deeding, in part payment of the same, forty acres of the Caton farm.

In September, 1868, a partition was amicably made of the home farm between David and Daniel W., of the one part, and the three girls, Sarah, Hannah, and Margaret, upon the other. By this partition the girls received in severalty certain portions of the premises, amounting to 140 acres in all; leaving in the possession of David and Daniel W. the sixty acres they had bought of John, and 100 acres besides. Quit-

claim deeds were executed and delivered between the parties to carry out this agreement.

In the deed of the girls, conveying their interest in the 100 acres to David and Daniel W., it was expressly stated that three-fifths was to be the property of David, and Daniel W. was to have two-fifths of the premises. Subsequently, the boys bought out the girls, and when this bill was filed they owned together the old farm as their father left it.

Differences arose between David and Daniel W. in '1884, and the complainant filed his bill for a partition of the lands, a dissolution of the copartnership, and an accounting. The defendant Anna Mitchell is the wife of Daniel W., and Mary A. is the wife of David. They are made parties defendant because of their dower-rights in the premises.

There is no dispute as to the division of 200 acres of the old farm. It is conceded that each of the boys has an equal one-half interest in the same. David claims three-fifths of the 100 acres, while Daniel insists that it should be divided equally. Ten acres of the Caton farm, the legal title of which stands in David, is also in dispute. Daniel claims half of it, while David denies that he has any interest in it.

The court below found in favor of David on both claims, and a partition of the land has taken place on that basis, and the case referred for an accounting.

The defendant Daniel W. appeals. He finds no fault with the partition as it has been made, in case his claim is not sustained here. He asks this Court to decree him a half interest in the 100 acres of the home farm, and also in the Caton 10 acres. The widow of George Mitchell lived on the place with the children and helped manage the farm and property until she died, in 1862. There was $500 or $600 of personal property at the father's death. He was owing about $100.

It is claimed by the defendant's counsel that the Caton farm was purchased almost wholly from the proceeds of the

home farm; that William's interest was purchased in the same way; that John C. and David occupied a fiduciary and confidential relation towards the defendant and the other children, especially those who were under age; that, when they took charge of the estate and managed it, the profits of the property inured to the benefit of all; and although they took the legal title of the Caton farm in their own names, and also William's interest in the home farm, they must hold the same in trust for all the children.

We listened with pleasure and profit to a most able and interesting argument from defendant's counsel upon the duties of these older children, under the circumstances, to the younger, and as to the latter's rights to their full share of the proceeds of this farm of their father's; but we do not consider it necessary, in adjusting the equities between these two brothers, to investigate or discuss what might be, under other circumstances or in other cases, the duties or rights of older and younger children in a case like the present.

Here, all the parties have been satisfied with the arrangements made between all the children for 17 years, since the last division in 1868, and the defendant has acquiesced in the deeds of William and John since 1863, when he became of age. When he was 21 years old, and presumably a man of ordinary intelligence,—at least, the law presumes that he was capable of transacting business for himself,—he, in common with David, took possession of William's and John's shares under a deed that gave, in effect, David three-fifths to his two-fifths of such interest. And in 1868, when the partition with the girls was made, he accepted a deed from them conveying their interest in the 100 acres in the same proportion as between him and David. He knew, also, from the beginning, that he had no part in the legal title to the Caton farm, and he made no claim for any share therein until he and David disagreed about their partnership matters.

His claim as to the 100 acres is that he was not aware of

the clause in the deeds giving David three-fifths of the same. We think his claim cannot be sustained from the evidence. We are satisfied that he knew all about it, and concurred with the rest of the children in the arrangement. When he became of age he admits that he received one-third of the personal property then on the place, which amounted, according to the testimony, to about $500. This, David claims, was given him for his work upon the farm while a minor. It would appear from the evidence that Daniel W. received more benefit from the working of his father's place by his older brothers than he would had the farm and property been divided at once upon George Mitchell's death. Between such death and the majority of the defendant, houses and barns were built upon the place, an orchard set out, and forty acres or more cleared and converted into plow land. Of these improvements all the children in the partition of 1868 received their full share in the division of the farm.

But, be this as it may, the defendant must be considered to have been fully acquainted with the arrangement by which David became entitled to three-fifths as against his two-fifths of the 100 acres, and also possessed of the whole title to the ten acres of the Caton farm. In this arrangement and division he has acquiesced for over twenty years. It is too late now for him to disturb or impeach it.

The decree of the court below was right, under the proofs, and must be affirmed, with costs.

The record will be remanded to the circuit court, in chancery, for the county of Oakland, for further proceedings under its decree.

SHERWOOD, C. J., and CHAMPLIN, J., concurred. CAMPBELL, J., did not sit.